Beth Ginsberg (WSBA #18523)
Jason T. Morgan (WSBA #38346)
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, Washington 98101
(206) 624-0900 (phone)
(206) 386-7500 (facsimile)
beth.ginsberg@stoel.com
jason.morgan@stoel.com

*Attorneys for Washington State Snowmobile Association*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WASHINGTON STATE SNOWMOBILE ASS'N,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## I.   INTRODUCTION

1.  Van Epps Pass in the Central Eastern Cascade Mountains is one of the most popular spots for winter motorized recreational enthusiasts in Washington State. The pass is accessible in the summer from U.S. Forest Service Road 1330-170, through a steep 2.5-mile primitive dirt road (U.S. Forest Service Road 4WD-302). In the winter, the 13-mile trail to the base of 4WD-302 is accessible via a groomed snowmobile trail and is maintained through funds raised by snowmobile

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 1

users over that same road ("the snowmobile fund"). For more than 30 years, the winter groomed road, which turns into a steep and ungroomed final two-mile narrow ascent, has made Van Epps Pass a safe and frequently used destination for snowmobilers to enjoy the Cascade Mountain wilderness at high elevation.

2. Without any public notice or public process, and without conducting any environmental review, the U.S. Forest Service ("FS") issued a special use permit ("permit") earlier this year to Wenatchee Mountain Alpine Huts, LLC ("Alpine Huts") to build commercial winter lodging at the top of the pass. The permit allows Alpine Huts to construct its winter lodging facility immediately adjacent to the primary snowmobile route used by WSSA's members to access off-trail riding in the Van Epps Pass area – 4WD-302. The permit contemplates that Alpine Huts' guests will recreate in a known avalanche risk area that Alpine Huts will rent for profit to back-country skiers and snowshoers. By issuing the permit, the FS introduced a competing commercial venture focusing on non-motorized recreation into an area that has been heavily used by snowmobilers, creating serious safety concerns, all while degrading both the winter snow trail and the underlying primitive road.

3. WSSA seeks declaratory and injunctive relief requiring the FS to immediately withdraw the procedurally and substantively defective permit. WSSA also seeks to require the FS to prevent Alpine Huts from repeatedly using this primitive, narrow, and extremely steep road to haul tons of construction equipment and building material to build three seasonal lodging huts, until the FS provides notice and an opportunity for public comment on this significant change in use, and conducts an environmental evaluation required under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, that is

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 2

1 commensurate with the level of resulting environmental and human health and
2 safety effects.

## II. JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, 28 U.S.C. § 1331 (federal question), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

5. Venue is properly vested in this Court under 28 U.S.C. § 1391 because (i) members of WSSA reside in this district and snowmobile and do business here; (ii) the permit at issue governs lands and waters in the Okanogan-Wenatchee National Forest, located in Kittitas County; (iii) the permit was issued by the Cle Elum FS District; and (iv) FS local headquarters are located in Wenatchee, Washington.

## III. PARTIES

6. Plaintiff WSSA is suing on behalf of itself and its members. WSSA is a non-profit organization founded in 1972 representing approximately 25,000 registered snowmobile owners and snowmobile-related businesses in Washington State. WSSA is dedicated to protecting the recreational and aesthetic interests of its members in accessing and enjoying public lands. WSSA participates in public processes that impact snowmobile access in Washington, and where necessary, WSSA protects its members' recreational and aesthetic interests through litigation.

7. WSSA's members have been heavily using the groomed snowmobile trail to Van Epps Pass, together with off-trail areas near the pass, for more than 30 years. WSSA's members fund the grooming of the snowmobile trail on FS Roads 4330 and 4330-170 that will be used by Alpine Huts for commercial purposes. Without contributing to the fund, Alpine Huts will use the groomed trail to shuttle their guests and their luggage up the 13-mile trail, along with lodging supplies and

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 3

firewood. The heavy machines that will haul guests and supplies will quickly damage the groomed surface of the trail, creating ruts and moguls that will significantly degrade the recreational experience of WSSA's members. The viability of the groomed snowmobile trail also depends on the underlying integrity of FS Road 4330-170, which Alpine Huts will degrade through hauling tons of construction equipment and building materials, along with multiple 100-gallon propane tanks, cords of firewood, and large drums of human waste up and down that road in the off-season.

8. The FS's decision to issue the special use permit to Alpine Huts has harmed and will continue to harm the recreational interests of WSSA's members in numerous ways. Alpine Huts' commercial activity will degrade the recreational and aesthetic experience of WSSA members by:

(a) Significantly increasing vehicle traffic on FS Road 4330-170, leading to increased erosion and road damage, potentially rendering the road unusable;

(b) Significantly increasing the use of the Van Epps Pass area with more than 800 back-country skiers and snowshoers annually who will both compete and conflict with the current use of this area by snowmobilers;

(c) Creating safety hazards by placing non-motorized and motorized recreators on the same steep and narrow road with limited mobility options;

(d) Adding 4,680 additional user days to this heavily trafficked area currently used by its WSSA members, and thereby increasing the risk of avalanche and related safety concerns; and

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 4

    (e)    Degrading the quality of the groomed snow trail by shuttling guests and luggage with heavy machines that cause ruts and moguls, thereby diminishing the recreational experience of WSSA's members.

9. WSSA and its members have also suffered procedural injury by the FS's failure to comply with the public notice and comment requirements for special use permits and by the FS's failure to provide WSSA and its members with an opportunity to participate in the required NEPA process. These injuries, and those discussed above, would be redressed through an order vacating the permit, and requiring the FS to comply with its regulations by providing WSSA, and the public more generally, with notice and an opportunity for public comment on any future proposal to issue Alpine Huts a special use permit.

10. Defendant FS is an agency of the U.S. Department of Agriculture responsible for administering special use permits in the Okanagan-Wenatchee National Forest. The FS is charged with, *inter alia*, complying with NEPA and corresponding FS implementing regulations (40 C.F.R. Parts 100-1508 and 36 C.F.R. Part 220) together with FS permitting regulations (36 C.F.R. § 251.54).

### IV.  LEGAL FRAMEWORK

**A.  <u>The Administrative Procedure Act</u>**

11. The APA authorizes courts to hold unlawful and set aside final agency action that is arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 702(2)(A).

**B.  <u>The National Environmental Policy Act</u>**

12. NEPA requires agencies to evaluate the environmental effects of agency proposals before taking final agency action to approve issuance of any permit to use federal land. 42 U.S.C. § 4332; 40 C.F.R. § 1508.18(b)(4).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 5

13. NEPA and corresponding FS implementing regulations require the FS to inform the public about a proposed action. In this case, NEPA required the FS to provide the public with an opportunity to comment on the likely environmental impacts of a proposed special use permit to Alpine Huts. 42 U.S.C. § 4332(G); 36 C.F.R. §§ 220.3-220.4.

14. More specifically, the FS NEPA Handbook (FSH 1909.15) required the FS to issue a Schedule of Proposed Actions ("SOPA") informing the public about proposed and ongoing FS actions that may undergo environmental analysis. The SOPA is designed to enable interested persons to become aware of FS activities and to indicate their interest in specific proposals. The SOPA must include a description and location of upcoming projects expected to undergo environmental analysis, an estimated date when environmental scoping may begin, and the estimated date of the permitting decision.

15. The FS failed to issue a SOPA for the proposed Alpine Huts special use permit.

16. NEPA also requires federal agencies to prepare an Environmental Impact Statement ("EIS") for any major federal action significantly affecting the human environment. 42 U.S.C. § 4332(C).

17. To determine whether an action significantly affects the human environment and requires development of an EIS, agencies may first conduct an Environmental Assessment ("EA"), which can take the form of a more truncated or streamlined analysis. 40 C.F.R. § 1501.4(c); 40 C.F.R. § 1508.9. However, only if an agency properly concludes (through issuance of an EA) that the proposed action will have no significant effects on the human environment may the agency issue a Finding of No Significant Impact ("FONSI") in lieu of an EIS.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 6

111661200.2 0040924-00012

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

18. Not only did the FS fail to issue an EIS, the FS failed to issue an EA and a FONSI for the Alpine Huts special use permit, failed to engage in required scoping procedures for the project, and failed to otherwise issue a determination that NEPA review was not required.

19. All NEPA reviews – whether in the form of an EA or an EIS – must evaluate a reasonable range of alternatives and their corresponding effects. 42 U.S.C. § 4332)(E).

20. By failing to issue a SOPA for the permit, and otherwise failing to notify the public of its intent to not conduct a NEPA review, the FS failed to provide the public any notice of the agency's intent to issue the permit.

21. The FS also failed to provide the public with an opportunity to comment on the environmental impacts of the proposed permit, and reasonable alternatives thereto, and otherwise failed to engage in any environmental analysis of the proposed permit before issuing it to defendant Alpine Huts.

### C.  **FS Permitting Regulations**

22. The FS was also required to evaluate whether issuance of the permit would conflict with existing uses by pitting one set of existing recreational users against another. 36 C.F.R. § 251.54(e)(1)(v) & (2).

23. In particular, the FS failed to properly evaluate whether issuance of the permit – allowing commercial lodging and transport of 833 guests, totaling 4,680 additional user days of the Van Epps Pass area by back-country skiers and snowshoers on an annual basis – would conflict with the existing and heavily trafficked snowmobile use of the steep and treacherous road leading to the pass and associated off-road recreational areas.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 7

24.     The FS was also required to evaluate whether issuance of the permit would pose a serious or substantial risk to public health or safety pursuant to 36 C.F.R. § 251.54(e)(1)(iii).

25.     The FS failed to properly evaluate whether permitting an additional 4,680 user days in an area prone to avalanches poses an unreasonable risk to all winter recreators in the Van Epps Pass area.

## V.    FACTUAL BACKGROUND

### A.    The Alpine Huts Permit Proposal

26.     Van Epps Pass is a remote location accessible by a primitive 2.5-mile road (4WD-302) that terminates at the historic Van Epps Mine. Travel by jeep in the summer commonly takes more than two hours to travel the windy, steep, and rugged road.

27.     The FS operates a snow park (a vehicle parking area) at Salmon La Sac. WSSA's members fund approximately 75% of the snow removal costs and 67% of the sanitation costs for this snow park through a snowmobile fund specially created for this purpose.

28.     More specifically, costs associated with twice-weekly grooming of the 13-mile snowmobile trail from the Salmon La Sac snow park to Van Epps Pass are funded through the snowmobile fund. This winter trail traverses through three large avalanche "runout zones," defined as areas of the avalanche path where deceleration is rapid, debris is deposited, and the avalanche stops. The fund also pays for the groomer to assess the avalanche risk on a daily basis.

29.     Alpine Huts first approached the Cle Elum District Forest Ranger about approving a commercial proposal to build winter lodging at the top of the Van Epps Pass in 2019. Alpine Huts hopes to attract at least 833 guests to its winter lodging every season.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 8

111661200.2 0040924-00012

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

30. In support of its proposal, Alpine Huts submitted a permit application together with a Supplementary Response Package-Standard Form 299 to the Cle Elum Ranger District in October 2020.  Alpine Huts' proposal was to construct two lodging areas – the Van Epps Pass Ridge Camp and the Van Epps Pass Col Camp.  The Van Epps Pass Ridge Camp will support two huts heated by a wood stove, each of which will sleep eight persons.  The Van Epps Pass Col Camp will support one hut heated by a wood stove, which will similarly house eight persons.  Each camp will have its own firewood, outhouse, drum toilet storage building, and fuel storage area.

31. The huts will be located at the top of the Van Epps Pass at an elevation of approximately 6,000 feet.  The permit allows these huts to be built each year before the snow falls, and removed each year after the snow melts.  The permit allows Alpine Huts to operate for two years (expiring on December 31, 2022), and contemplates that it could be renewed for up to eight additional years.

32. FS Road 4WD-302 is inaccessible for large trucks carrying heavy loads.  Nonetheless, the permit now allows Alpine Huts to make hundreds of trips on this road to haul construction equipment, building materials, and associated supplies – together with large propane tanks, latrine facilities, and large amounts of firewood – to construct the seasonal lodging.  It also allows Alpine Huts to haul 55-gallon drums of human waste back down the narrow, steep, and treacherous road.

33. The huts can be rented for $800 per night and will be accessed by commercial guests using a combination of groomed Sno-Park trails from the Salmon La Sac Sno-Park and a skiing/snowshoe route.  From the Salmon La Sac Sno-Park, users will be transported by snowmobiles operated by Alpine Huts (for a fee of $60 per guest) on the groomed trails (maintained by WSSA members) to the

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 9

111661200.2 0040924-00012

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

base of FS Road 4WD-302.  From there, guests will be required to snowshoe or ski the last two miles, together with their luggage, to the top of Van Epps Pass.

34. The permittee has acknowledged that during periods of extreme or high avalanche risk, Alpine Huts may be forced to shorten or halt snowmobile assisted "shuttle services" up the 13-mile groomed road.

### B.    The Need for NEPA Review

35. Although recognizing that the proposal could have significant impacts on the environment and, thus, the need to conduct a NEPA analysis, the FS began working on issuing a special use permit to Alpine Huts without conducting any environmental review.  Public records produced by the FS show that FS staff were concerned that the Cle Elum District lacked the personnel necessary to conduct the required NEPA review.  Rather than waiting to obtain necessary staff and resources, the FS decided instead to simply issue the special use permit without any record of having conducted a NEPA analysis as required by law.

36. But NEPA review was particularly important for this permit for multiple reasons.  First, the set-up and tear-down of the seasonal winter housing proposed by Alpine Huts will significantly impact the underlying road and use of the groomed trail.  The sheer weight of the construction equipment and building materials that must be hauled up the steep primitive road to construct the winter lodging, and the repeated trips on this unpaved road required to complete this seasonal activity, will likely result in destructive erosive effects.

37. Second, increased use of the groomed winter trail by "shuttle services" operated by Alpine Huts will increase the wear and tear and associated maintenance costs of the snow trail currently funded by WSSA members.

38. Third, the addition of 4,680 user days of commercial recreational activity will increase the avalanche risk to the back-country skiers, snowshoers,

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 10

and snowmobilers competing to use this heavily trafficked and popular recreation area and associated FS road.

39. Fourth, the environmental effects of the human waste that will be created by the 833 guests – most of whom will spend several nights at the Alpine Huts – were overlooked. That waste will need to be safely disposed of after being transported back down the mountain on the same road currently used by WSSA's members for recreational purposes.

40. Fifth, the FS should have evaluated the use and storage of propane that will be used by Alpine Huts guests for cooking, along with the ambient effects of wood burning by these same 833 guests over 4,680 additional user days.

41. Finally, the FS should have evaluated impacts on the limited parking available to recreational users at the Salmon La Sac Sno-Park. Alpine Hut guests will now compete for the limited parking currently used by snowmobilers. The lack of parking, and the introduction of hundreds of additional motorized vehicles in the area, should have been considered by the FS before deciding to issue the permit.

42. These are some but not all of the environmental effects that should have been thoroughly evaluated after an opportunity for public comment through a formal NEPA process that was entirely ignored by the FS in connection with the issuance of the permit.

C. **The FS Failed to Comply with Special Use Permitting Regulations**

43. In addition to the above, the FS failed to follow its special use permit regulations by considering whether issuance of the special use permit to Alpine Huts would unreasonably conflict or interfere with existing snowmobile use. Proposals that are determined to unreasonably conflict or interfere with existing uses may not be permitted. 36 C.F.R. § 251.54(e)(2) & (5).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 11

111661200.2 0040924-00012

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

44. Similarly, the FS should have but failed to determine whether issuance of the special use permit to Alpine Huts would pose a serious or substantial risk to public health or safety by introducing an additional 4,680 user ski days to this avalanche-prone area. *Id.* Proposals that are determined to pose a serious or substantial risk to public health or safety are prohibited from being permitted. *Id.*

45. Upon information and belief, Alpine Huts is preparing to haul tons of construction equipment and building material up the steep road maintained by WSSA to start construction of the seasonal lodging in early to mid-October of this year. Fortune Creek Huts, https://fortunecreekhuts.com (last visited July 26, 2021). Alpine Huts is preparing to provide guest services at the top of the Van Epps Pass this coming ski season.

### VI. CAUSE OF ACTION

#### A. Claim I – Violation of NEPA

46. WSSA realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

47. Pursuant to 42 U.S.C. 4321, *et seq.*, the FS was required to conduct a NEPA review before issuing the permit to Alpine Huts and to involve the public in that process. 40 C.F.R. § 1508; 36 C.F.R. § 220.4.

48. The FS failed to conduct a NEPA evaluation of any sort before issuing the permit in violation of 42 U.S.C. § 4321, *et seq.* and the FS's NEPA implementing regulations, 36 C.F.R. Part 220. At a minimum, the FS was required to issue an EA and a FONSI before issuing the special use permit, or to otherwise explain why a NEPA process was not required.

49. The APA authorizes reviewing courts to set aside federal agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 12

111661200.2 0040924-00012

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

with law.  5 U.S.C. § 706(2)(A).  By failing to conduct a NEPA evaluation before issuing the permit and by failing to provide the public with notice of the FS's intent to issue the permit, the FS violated its own regulations at 36 C.F.R. Part 220 and the APA, 5 U.S.C. § 706.

### B. Claim II – Failure to Follow FS Regulations

50. WSSA realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

51. FS regulations required the agency to publish a SOPA and scoping for all proposed actions.  36 C.F.R. § 220.4.  The FS failed to publish a SOPA and to conduct environmental scoping for this special use permit.  This failure was arbitrary, capricious, and contrary to law under the APA.

52. FS regulations also compelled the agency to seek public comment and make a determination as to whether issuance of the permit would pose a serious or substantial risk to public health and safety.  36 C.F.R. § 251.54(e)(1)(iii).  The FS did not comply with this regulation, solicited no public comment, and failed to properly evaluate risks to public health and safety related to increased interaction between motorized and non-motorized users.

53. FS regulations prohibit the FS from issuing a permit that causes a serious or substantial risk to public health or safety.  36 C.F.R. § 251.54(e)(2).  The FS failed to determine whether issuance of the permit to Alpine Huts would pose a serious or substantial risk to public health and safety from avalanches as a result of the increased use of the Van Epps Pass area.  *Id*.  This, too, was arbitrary, capricious, and contrary to law under the APA.

54. Similarly, FS regulations required the FS to seek public comment on and to determine whether issuance of a permit would unreasonably conflict or interfere with other authorized existing uses of the National Forest System.  36

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 13

C.F.R. § 251.54(e)(1)(v).  FS regulations prohibit the FS from issuing a permit that unreasonably conflicts or interferes with preexisting uses, or that is not otherwise in the public interest.  36 C.F.R. § 251.54(e)(2) & (5).

55. The new permitted commercial use of Van Epps Pass, coupled with heavy and sustained use of the primitive FS roads and snowtrails necessary for this purpose, unreasonably conflicts with existing non-commercial recreational activities.  The approval of the special use permit therefore was arbitrary, capricious, and contrary to law under the APA.

56. By issuing the permit without providing the public with any advanced notice and opportunity to comment on the same, and by violating governing FS special use permitting regulations by failing to determine whether the permit would unreasonably conflict with existing snowmobile use, the FS violated the APA.  5 U.S.C. § 706(a)(2).

**PRAYER FOR RELIEF**

WHEREFORE, WSSA respectfully requests that the Court:

1. Adjudge and declare that the FS violated NEPA and the APA by issuing a special use permit that was not preceded and informed by a NEPA analysis;

2. Adjudge and declare that the FS violated the APA by issuing a special use permit that did not comply with FS permit regulations;

3. Vacate the special use permit and remand to the FS;

4. Enjoin the FS to prohibit Alpine Huts' use of the permit while the FS takes the necessary procedural steps to withdraw or rescind the permit;

5. Award WSSA its reasonable fees, costs, expenses, and disbursements including attorneys' fees associated with this litigation; and

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 14

111661200.2 0040924-00012

1  6. Grant WSSA such further and additional relief as the Court may deem just and proper.

DATED: July 27, 2021.

STOEL RIVES LLP

*s/ Beth S. Ginsberg*
Beth Ginsberg (WSBA #18523)

*s/ Jason T. Morgan*
Jason T. Morgan (WSBA #38346)
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, Washington 98101
(206) 624-0900 (phone)
(206) 386-7500 (facsimile)
beth.ginsberg@stoel.com
jason.morgan@stoel.com

*Attorneys for Washington State Snowmobile Association*

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 15